IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEFFREY T. MACMILLAN, M.D., <br> JEFFREY T. MACMILLAN, M.D., P.A., and <br> GUSTAV RIEMER, <br><br> Plaintiffs, <br><br> v. <br><br> MIDWEST DIVISION-OPRMC, LLC, a <br> foreign limited liability company, d/b/a <br> OVERLAND PARK REGIONAL MEDICAL <br> CENTER, INC., <br><br>     Serve at: <br>     STK Registered Agent, Inc., <br>     9225 Indian Creek Parkway, <br>     32 Corporate Woods, Suite 1100, <br>     Overland Park, Kansas  66210 <br><br> JOHN ROMITO, M.D., <br><br>     Serve at: <br>     10550 Quivira Road, Suite 310, <br>     Overland Park, Kansas  66215 <br><br> MARK HUMPHREY, M.D., <br><br>     Serve at: <br>     10550 Quivira Road, Suite 310, <br>     Overland Park, Kansas  66215 <br><br> and ASSOCIATED ORTHOPEDICS, P.A., <br><br>     Serve at: <br>     4016 W. 110th Street <br>     Overland Park, Kansas  66211 <br><br>     Defendants. | Case No: 08-CV-2654 CM/DJW |

## PETITION

NOW COME Jeffrey T. MacMillan, M.D., Jeffrey T. MacMillan, M.D., P.A., and Gustav Riemer, and for their claims for relief against defendants state as follows:

## PARTIES

1. Jeffrey T. MacMillan, M.D., is a physician practicing orthopedic surgery with his residence and principle place of business in Johnson County, Kansas.

2. Jeffrey T. MacMillan, M.D., P.A., is a professional association organized according to the laws of the state of Kansas with its principle place of business in Johnson County, Kansas.

3. Gustav Riemer is a physician's assistant who was formally employed by defendant Midwest Division – OPRMC, LLC, d/b/a Overland Park Regional Medical Center, Inc. (hereinafter referred to as "Overland Park Regional").

4. Overland Park Regional is a foreign limited liability company and may be served with process by serving STK Registered Agent, Inc., 9225 Indian Creek Parkway, 32 Corporate Woods, Suite 1100, Overland Park, Kansas  66210.

5. John Romito, M.D., is an orthopedic surgeon residing in Johnson County, Kansas with his principle place of business in Johnson County, Kansas.  He may be served with process at his place of business at 10550 Quivira Road, Suite 310, Overland Park, Kansas  66215.

6. Mark Humphrey, M.D., is an orthopedic surgeon residing in Johnson County, Kansas with his principle place of business in Johnson County, Kansas.  He may be served with process at his place of business at 10550 Quivira Road, Suite 310, Overland Park, Kansas 66215.

7. Associated Orthopedics, P.A., is a professional association and may be served with process at 4016 W. 110th Street, Overland Park, Kansas  66211.

## JURISDICTION

8. Plaintiffs bring claims against defendants under both state and federal law. The claims of Jeffrey T. MacMillan, M.D., and Jeffrey T. MacMillan, M.D., P.A., are brought under the common law of Kansas, under the United States Antitrust statutes, 15 U.S.C. § 1 *et seq.* and the Kansas Antitrust statutes, K.S.A. 50-101 *et seq.* Jurisdiction is provided in this court by 15 U.S.C. § 4.

9. Gustav Riemer brings his claim against Overland Park Regional under the Uniformed Services Employment and Re-employment Rights Act, 38 U.S.C. § 4301 *et seq.* Jurisdiction is provided for this claim in this Court by 38 U.S.C. § 4323(b)(3).

## ALLEGATIONS COMMON TO ALL COUNTS

10. Jeffrey T. MacMillan, M.D., has practiced orthopedic surgery in Johnson County, Kansas through his corporation Jeffrey T. MacMillan, M.D., P.A., since 1995. For a number of years, he was a member of the staff at Overland Park Regional and was one of the key members of the team providing trauma services to that hospital.

11. Gustav Riemer is a physician's assistant who generally practiced with Dr. MacMillan but who was an employee of Overland Park Regional.

13. Overland Park Regional is a Level II trauma center and relies on the availability of physician specialists to be "on-call" in order to maintain its designation.

14. Dr. MacMillan was frequently "on-call" for the Overland Park Regional emergency room and trauma service. In 2005, 2006, 2007 and through August 2008, Dr. MacMillan averaged providing on-call coverage for orthopedic surgery about 23 days of each month.

15. In 2003, Dr. MacMillan and his professional association entered into an agreement with Overland Park Regional to provide on-call trauma service. As a part of this agreement, leased office space and leased employees were provided to Dr. MacMillan and his professional association.

16. In 2007, Overland Park Regional or one of its corporate affiliates, acquired the franchise for the Human Motion Institute and began creating office space for this entity at 10550 Quivira Road, where Dr. MacMillan had his offices.

## COUNT I
## DAMAGE TO BUSINESS FROM BREACH OF LEASE

17. While defendant Overland Park Regional was building the Human Motion Institute, business interruptions and disruptions occurred to Dr. MacMillan's practice, in breach of the lease agreement.

18. The vibrations and disruptions from the construction activity caused the computer server for Dr. MacMillan's practice to continually shut down. This resulted in computer down time and eventually in the cost and expense of relocating the computer and server, which costs included rewiring of CAT5 cabling.

19. The disruptions and vibrations of the construction process also caused temporary loss of the phone lines to Dr. MacMillan's practice.

20. Overland Park Regional also breached its lease agreement with Dr. MacMillan and his professional association by its conduct regarding the leased radiology technology employee, Donna Alexander.

21. Donna Alexander was ineffective, inefficient and chronically absent. Despite complaints, Overland Park Regional would not replace or discipline Donna Alexander. This

resulted in disruption of Dr. MacMillan's practice as well as costs in Dr. MacMillan hiring radiology technologists to replace Donna Alexander when she was absent.

22. As a further result of Ms. Alexander's chronic absenteeism and failure to properly perform her job, work regarding x-rays was not properly charted or billed, resulting in loss of income to the practice.

23. As another breach of the lease agreement, Dr. MacMillan and his practice were not properly paid for equipment that was used during the practice. Overland Park Regional improperly paid monies that were due to Dr. MacMillan and his practice to Roger Hood, M.D. When this error was pointed out, Overland Park Regional made some payment to Dr. MacMillan, but has yet to pay the full amount owed for this equipment.

24. As a part of the lease agreement with Overland Park Regional, part of the money paid by Dr. MacMillan and his practice were meant to be used for advertising. Nevertheless, Overland Park Regional did not advertise Dr. MacMillan or his practice, but rather used this money to advertise the HCA Spine Center and Larry Cordell, M.D., an employee of an affiliate of Overland Park Regional. In fact, Overland Park Regional ran advertisements for Dr. Cordell and the HCA Spine Center on a large screen TV in the same waiting room that Dr. MacMillan's patients used.

## COUNT II
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

25. The relationship of Dr. MacMillan and his practice with his patients was tortiously interrupted by Overland Park Regional in that Overland Park Regional continually gave preferential treatment to Drs. Romito and Humphrey with regard to office equipment, office personnel, and office hours.

26. The practice of Dr. MacMillan was also harmed by Overland Park Regional due to its practice of steering patients away from Dr. MacMillan and to Drs. Romito and Humphrey.

27. Dr. MacMillan's practice was also wrongfully harmed by the statements made by Janice Harp, en employee of Overland Park Regional, that Dr. MacMillan was terminating his practice, when these statements were untrue.

## COUNT III
## DEFAMATION

28. Dr. MacMillan and his practice were harmed by false and misleading statements made by Overland Park Regional. These statements include the following:

(a) A statement made by Richard Rosenthal, M.D. (in his capacity as president elect of the medical staff), in a letter dated July 7, 2008, that actions by Dr. MacMillan "clearly disrupted hospital operations such that the quality of patient care was likely affected."

(b) A statement by Dr. Rosenthal in his same capacity in a letter dated August 7, 2008 that "gaps in patient care" occurred during Dr. MacMillan's prior vacation.

29. These statements were false and had the effect of holding Dr. MacMillan up to disrepute in the medical community, harming his practice.

## COUNT IV
## CONSPIRACY IN RESTRAINT OF TRADE

30. Through May 19, 2008, Dr. MacMillan had designated Roger Hood, M.D., as his back-up physician for the times that Dr. MacMillan was "on-call" for orthopedic surgery for the trauma service and emergency room at Overland Park Regional. On May 19, 2008, Dr. Hood abruptly retired and ceased practicing at Overland Park Regional.

31. At this time, Dr. MacMillan already had a long planned trip to Peru which would take him out of the country in late May and early June 2008.

32. Dr. MacMillan made arrangements for coverage of his practice and his patients during his absence and no disruption in patient care occurred.

33. Nevertheless, Overland Park Regional began making false and harassing statements to and about Dr. MacMillan concerning his practice, including the statements by Dr. Rosenthal set forth above.

34. After Dr. Hood retired from his practice at Overland Park Regional, defendants John Romito, M.D., Mark Humphrey, M.D. and Associated Orthopedics, P.A. conspired with Overland Park Regional to prevent Dr. MacMillan from obtaining backup coverage for his trauma call.

35. Said conspiracy resulted in Dr. MacMillan losing his trauma practice at Overland Park Regional.  Said conduct constituted a conspiracy in restraint of trade in violation of 15 U.S.C. § 1 and K.S.A. § 50-101 *et seq.*

36. At the same time, Overland Park Regional placed a deadline for Dr. MacMillan to find backup coverage, which deadline Dr. MacMillan was unable to meet due to the conspiracy among all the defendants to deprive him of backup coverage.

37. The backup arrangements that were proposed by Dr. MacMillan were unreasonably rejected by Overland Park Regional.

38. As a result of the conspiracy of the defendants, Dr. MacMillan was required to cease his practice on the trauma service and take a leave of absence from the Overland Park Regional staff.

39. Dr. MacMillan has now relocated his practice to Shawnee Mission Medical Center, which does not have a trauma service.

40. This conspiracy in restraint of trade has resulted in the trauma coverage at Overland Park Regional being provided by another physician who is an employee of Overland Park Regional, or its affiliates, which is much less costly to Overland Park Regional.

41. The disruption of the trauma service caused by driving Dr. MacMillan from the trauma service and from the hospital has had an impact on the proper functioning of the trauma service and, therefore, an impact on the community.

41. As a result of being driven from the trauma service, Dr. MacMillan and his practice have suffered a significant loss of income in excess of $75,000 and will continue to suffer such loss of income in the future.

## COUNT V
## VIOLATION OF USERRA

42. Gustav Riemer was an employee of Overland Park Regional. He was a member of the United States Army Reserves.

43. In 2007, Mr. Riemer's unit was placed on active duty and deployed to Iraq.

44. Mr. Riemer properly notified his employer of his deployment to Iraq.

45. Nevertheless, while Mr. Riemer was in Iraq, defendant Overland Park Regional wrongfully terminated him in violation of 38 U.S.C. § 4301 *et seq*.

46. On his return from Iraq, Mr. Riemer was initially informed by Overland Park Regional that he would be re-employed. Mr. Riemer therefore resumed performing his duties. At the first pay day, however, Mr. Riemer was informed that he had not been re-employed and would not be paid. Dr. MacMillan and his practice were therefore obligated to make payments to Mr. Riemer which should have been made by Overland Park Regional.

{0123775.DOC}

47. Mr. Riemer is therefore entitled to all damages and relief from Overland Park Regional that is available under the Uniformed Service Employment and Re-Employment Rights Act.

WHEREFORE, plaintiffs pray that judgment be entered in their favor against defendants:

1. For damages in excess of $75,000 for each count;

2. For all attorney's fees as may be available under state or federal statute for these claims;

3. For all prejudgment and postjudgment interest as is allowable by law.

4. For the costs of this action ; and

5. For such further relief as to the court seems proper.

**NORRIS & KEPLINGER, L.L.C.**

By: ___/s/ Bruce Keplinger___
Bruce Keplinger, bk@nkfirm.com, #09562
Financial Plaza II
6800 College Boulevard, Suite 630
Overland Park, Kansas  66211
(913) 663-2000/(913) 663-2006 FAX
ATTORNEYS FOR PLAINTIFF

{0123775.DOC}