**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **JEFFREY T. MACMILLAN, M.D. et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 08-2654-CM** |
| | ) | |
| **MIDWEST DIVISION–OPRMC, LLC,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiffs Jeffrey MacMillan and Gustav Riemer filed a five-count complaint against

defendants Midwest Division–Overland Park Regional Medical Center, LLC, (herein Overland Park

Regional); Associated Orthopedics, P.A.; John Romito; and Mark Humphrey.  In Counts I–IV,

plaintiff MacMillan alleges damage to business from breach of lease (Count I); tortious interference

with business relationship (Count II); defamation (Count III); and antitrust conspiracy in restraint of

trade, in violation of 15 U.S.C. § 1 and K.S.A. § 50-101 (Count IV).  In Count V, plaintiff Riemer

alleges that defendant Overland Park Regional wrongfully terminated him in violation of the

Uniformed Services Employment and Re-Employment Rights Act, 38 U.S.C. § 4301, et seq.

Defendants filed a motion to dismiss the antitrust claim and sever the wrongful termination claim

(Doc. 9).  For reasons explained below, the court dismisses Count IV of plaintiffs' complaint and

denies without prejudice defendants' motion to sever Count V.

**I.      Factual Background**

Plaintiffs set forth the following facts in their complaint.  From 2005 to August 2008,

plaintiff MacMillan worked at the trauma center and emergency room of defendant Overland Park

Regional.  Dr. Roger Hood provided trauma and emergency back-up coverage for plaintiff

MacMillan until May 19, 2008, when Dr. Hood retired and ceased practicing.

Plaintiff MacMillan alleges defendants collectively conspired to prevent him from obtaining

back-up coverage, placed a deadline on him to find coverage, and unreasonably rejected his

proposed arrangements, thus forcing him to cease his practice and take a leave of absence from the

hospital.  Plaintiff MacMillan also alleges defendant Overland Park Regional replaced him with one

of its own, less costly employees, and that the disruption in trauma service impacted the community.

Plaintiff MacMillan further alleges defendant Overland Park Regional caused harmful disruptions to

his practice, gave preferential treatment to other doctors, and made false and harassing statements to

and about him.

In Count V of the complaint, plaintiff Riemer alleges he was wrongfully terminated from his

job as a physician's assistant at defendant Overland Park Regional while, as a member of the United

States Army Reserves, he was on active duty and deployed to Iraq.  Plaintiff Riemer alleges this

termination violates 38 U.S.C. § 4301, the Uniformed Service Employment and Reemployment

Rights Act.

## II.    Legal Standard

Defendants move to dismiss plaintiff MacMillan's antitrust claim under Federal Rule of Civil

Procedure 12(b)(1) for lack of jurisdiction over the subject matter and Rule 12(b)(6) for failure to

state a claim upon which relief can be granted.  In cases where "[d]efendants' arguments do not go

beyond the sufficiency of the complaint"—which is the present situation—"the analysis differs little

under either Rules 12(b)(1) or 12(b)(6)."  *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907,

923 (D. Kan. 2007).  This court will grant a Rule 12(b)(6) motion to dismiss only when the factual

allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008).  Plaintiff must show more than a sheer possibility that a defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent with" liability. *Ashcroft v. Iqbal*, __ U.S, __, 129 S.Ct. 1937, 1949 (2009).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. *Id.* at 1949–51.  The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.*

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  The court construes any reasonable inferences from these facts in favor of plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The issue in reviewing the sufficiency of a complaint is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

**III.     Discussion**

        *A.     Standing*

The Constitution provides that federal courts have jurisdiction over certain cases and controversies.  U.S. Const. art. III, § 2.  A federal court is not allowed to issue advisory opinions. *Qwest Corp. v. Pub. Util. Comm'n*, 479 F.3d 1184, 1191 (10th Cir. 2007).  Thus, to invoke this court's jurisdiction, plaintiff must have standing. *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)).  Article III standing requires that "plaintiff must allege personal injury fairly

traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested

relief." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  In an antitrust context, the standing

requirements are more rigorous.  *Tal*, 453 F.3d at 1253.  While "'harm to the antitrust plaintiff is

sufficient to satisfy the constitutional standing requirement of injury in fact,[] the court must make a

further determination whether the plaintiff is a proper party to bring a private antitrust action.'" *Id.*

(quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519,

535 n.31 (1983)).

To have antitrust standing, a plaintiff must show: (1) an "antitrust injury"; and (2) a causal

connection between the antitrust injury and the violation of antitrust laws.  *Id.* (citing *Ashley Creek

Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1254 (10th Cir. 2003).[1]  To provide more

specificity to the two-prong test, the Tenth Circuit has adopted the following factors for courts to

consider:  (1) the causal connection between the antitrust violation and the plaintiff's injury, (2) the

defendant's intent or motivation, (3) the nature of the plaintiff's injury—i.e., whether it is one

intended to be redressed by antitrust laws, (4) the directness or indirectness of the connection

between the plaintiff's injury and the market restraint resulting from the alleged antitrust violation,

(5) the speculative nature of the damages sought, and (6) the risk of duplicative recoveries or

complex damages apportionment.  *Sharp v. United Airlines, Inc.*, 967 F.2d 404, 407, n.2 (10th Cir.

1992).

Plaintiffs' complaint fails to suggest that plaintiff MacMillan's injury, if any, is of the type

---

[1]  "[S]tanding under the Kansas antitrust statutes requires an antitrust injury similar to that required under the Sherman and Clayton Acts."  *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1212 (D. Kan. 1999).  Although federal antitrust cases are not binding on the court in interpreting Kansas antitrust statutes, the court finds such cases are sufficiently persuasive and guide its decision with regard to standing under Kansas law.  *Id.* (citing *Bergstrom v. Noah*, 974 P.2d 520, 531 (Kan. 1999)).  Thus, the court analyzes plaintiff MacMillan's standing under  15 U.S.C. § 1 and K.S.A. § 50-101 together.

the antitrust laws were intended to prevent.  Plaintiff's complaint alleges that (1) defendants driving plaintiff MacMillan from the trauma center caused him to lose income; and (2) the disruption of defendants driving him from the hospital impacted the proper functioning of the trauma service and, therefore, the community.

An "antitrust injury" is an "'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Tal*, 453 F.3d at 1253 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  Antitrust laws were intended to prevent "corruption of the competitive process."  *Id.* at 1258.  Thus, "'only buyers and sellers in the defendants' market are within the target of the antitrust laws.'"  *Id.* (quoting *Comet Mech. Contractors, Inc. v. E.A. Cowen Constr., Inc.*, 609 F.2d 404, 406 (10th Cir. 1980)).  However, this circuit has held that employees may have an antitrust injury if they are quasi-businessmen or blackballed employees.  *Sharp*, 967 F.2d at 408 n.4.

Plaintiff MacMillan's loss of income does not state an antitrust injury.  "An antitrust injury must be analyzed from the consumer's viewpoint."  *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 638 (10th Cir. 2008) (citation omitted).  Therefore, plaintiff MacMillan must allege that defendants' conduct "affected the prices, quantity or quality of goods or services, not just his own welfare."  *Id.* (quotation omitted).  "The claim that a practice reduces (particular) producers' incomes has nothing to do with the antitrust laws, which are designed to drive producers' prices down rather than up. . . . Indeed, it does not even state an antitrust injury."  *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

However, plaintiff MacMillan could sustain an antitrust injury if he were a "quasi-businessm[a]n operating in a market carved out by [his] own aggressiveness and salesmanship qualities."  *Reibert v. Atl. Richfield Co.*, 471 F.2d 727, 730 (10th Cir. 1973).  But a physician who

provides emergency room services is not a quasi-businessman.  *Orr v. Beamon*, 77 F. Supp. 2d at

1212 n.3.  Plaintiff MacMillan's relationship to defendant Overland Park Regional was one in which

the hospital provided him with emergency room and trauma service clientele, not one in which he

carved out a market through aggressive salesmanship.  The complaint also fails to suggest plaintiff

MacMillan was a blackballed employee.  Nothing in the complaint suggests he has become

inherently unemployable to other emergency room hospitals and trauma centers throughout the

Overland Park or Kansas City metropolitan areas.  In fact, the complaint acknowledges plaintiff

MacMillan relocated his practice to the nearby Shawnee Mission Medical Center, though that

hospital does not have trauma service.  *See e.g., Orr*, 77 F. Supp. 2d at 1212 (dismissing the

plaintiff's antitrust claim because the plaintiff failed to allege defendants, collectively or

individually, took any steps to stop other hospitals in the Kansas City metropolitan area from hiring

him as an emergency room physician).

Disruption in the proper functioning of the trauma service is not an antitrust injury.

The complaint does not allege that driving plaintiff MacMillan from the trauma center decreased

consumer choice or quality of care or increased consumer prices.  *See e.g., Ginzburg v. Mem'l*

*Healthcare Sys., Inc.*, 993 F. Supp. 998, 1015 (S.D. Tex. 1997).  In fact, plaintiff MacMillan alleges

the opposite.  The complaint alleges that another physician is providing trauma coverage—thus,

there are no allegations that fewer physicians are providing trauma care—and that the new physician

is less costly to defendant Overland Park Regional.

Plaintiff MacMillan's injury is not of the type the antitrust laws were intended to prevent.

*See e.g., Orr*, 77 F. Supp. 2d at 1212 ("plaintiff's injury, which arises out of the termination of his

at-will employment, is simply not of the type the antitrust laws were intended to prevent.").  Plaintiff

MacMillan is not within the class of persons antitrust laws were intended to protect.  The complaint

fails to allege plaintiff MacMillan suffered an antitrust injury or that the injury falls into either of the two categorical exceptions recognized by this circuit.  Thus, plaintiff does not have standing.  Accordingly, the court does not have jurisdiction over plaintiff's antitrust claim.  The court dismisses plaintiff's antitrust claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  It is unnecessary for the court to consider defendants' other arguments regarding dismissal of the antitrust claim.[2]

### B.    Misjoinder

Defendants also move to sever Count V from the rest of plaintiffs' complaint.  Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Rule 20 governs permissive joinder of parties.  It allows permissive joinder of plaintiffs if: (1) they assert any right to relief with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all plaintiffs will arise in the action.  Fed. R. Civ. P. 20(a)(1).  Rule 20(a)(2) imposes two requirements that must be satisfied for the permissive joinder of multiple defendants in a single lawsuit: (1) a right to relief must be asserted against each defendant relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all defendant must arise in the action.  "While joinder is encouraged for purposes of judicial economy, the 'Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues.'"  *Green v. Denning*, No. 06-3298-SAC, 2009 WL 484457, at \*2 (D. Kan. Feb. 26, 2009) (quoting *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan.

---

[2]  Contrary to defendants' assertion, the court addresses the issue of antitrust standing first because it touches all of plaintiff MacMillan's antitrust claims.

2001)).

Plaintiffs concede that their claims are premised on distinct legal theories, but assert that the claims involve the same persons or entities and that discovery will show that the parties and claims are properly joined.  At this point in the proceeding, the court is not prepared to hold that the claims in this case are misjoined; however, defendants may seek to sever plaintiffs' claims if discovery reveals that the claims are misjoined.  Defendants' motion to sever is therefore denied without prejudice.

In their response, plaintiffs also summarily request to amend their complaint under Rule 15(a)(2).  "Generally, the court denies leave to amend only 'upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment.'"  *Powers v. Univ. of KS Hosp. Auth.*, No. 09-2323-KHV, 2009 WL 2912480, at \*1 (D. Kan. Sept. 9, 2009) (citing *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993)).  Based on plaintiffs' summary argument and the limited record before the court, the court cannot determine whether allowing plaintiffs to amend would be proper under Rule 15.  Thus, plaintiffs' motion is denied without prejudice.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Count IV of Plaintiffs' Complaint and Sever Misjoined Claim (Doc. 9) is granted in part and denied without prejudice in part.

**IT IS FURTHER ORDERED** that plaintiffs' Motion for Leave to File an Amended Complaint (Doc. 12) is denied without prejudice.

-9-

Dated this <u>8th</u> day of October 2009, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**